UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| EMMANUEL BIBB HOUSTON, | ) |  |
|---|---|---|
| Petitioner, | ) |  |
| v. | ) | No. 4:17-CV-0072-DCLC-SKL |
| SHAWN PHILLIPS,[1] | ) |  |
| Respondent. | ) |  |

## MEMORANDUM OPINION

Petitioner, Emmanuel Bibb Houston, a state prisoner, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his state convictions for especially aggravated kidnapping, facilitation of especially aggravated robbery, and aggravated burglary for which he was sentenced to a 23-year term of imprisonment on these convictions. Before the Court is his petition, the Response filed by Respondent, and state court record field pursuant to Rule 5 of the Rules Governing § 2254 cases. For the reasons that follow, Petitioner's Section 2254 petition is DENIED.

**I. BACKGROUND**

On May 6, 2012, Petitioner and several other individuals, including Gregory Marlin, drank alcohol and socialized together at Mr. Marlin's residence. *State of Tennessee v. Houston*, No. M2013-01177-CCA-R3-CD, 2014 WL 2547795, at *1 (Tenn. Crim. App. June 4, 2014), *perm. app. denied* (Tenn. June 15, 2015) ("*Houston I*"). At some point, Mr. Marlin and his cousin left to go to Nashville, and Petitioner and the other individuals went to Petitioner's house. *Id.* at *3.

---

[1] As the Warden of Bledsoe County Correctional Complex, where Petitioner is currently incarcerated, is Shawn Phillips, he is the proper Respondent in this matter. Rule 2(a) of the Rules Governing 2254 and 2255 Cases.

While the group was at Petitioner's house, someone told Petitioner that Mr. Marlin had tried to take money that Petitioner had set on the counter at Mr. Marlin's house, and that Mr. Marlin had made derogatory comments about Petitioner to Ericka Myrick, one of the females in the group, essentially advising her "that she should not 'be messing with'" Petitioner and that Petitioner was old. *Id.* at *3. According to Ms. Myrick, Petitioner got angry and stated "that he 'was going to scare the s*** out of'" Mr. Marlin and take what was in his pockets. *Id.* Kenneth Antwan Dyer, another member of the group at Petitioner's house, heard "[Petitioner] say that '[h]e was going to beat [Mr. Marlin] up." *Id.* at *4.

After Mr. Marlin returned from Nashville, Ms. Myrick, Latorria McCord, and Alicia Briane Jones, three females from the group, rejoined him at his residence. *Id.* at *1, *3. Subsequently, Petitioner, Mr, Dyer, Deonta Twilley, and Samantha Houston (Petitioner's sister) also went back to Mr. Marlin's house. *Id.* at *4, *8. However, Mr. Dyer decided not to approach Mr. Marlin's house with the others after he saw Petitioner putting a baseball bat down the leg of his pants, and he walked down the street instead. *Id.* at *4. Petitioner, Mr. Twilley, and Ms. Houston then knocked on Mr. Marlin's door. *Id.* at *1, *3.

Mr. Marlin answered the door and allowed these three individuals inside, at which point Petitioner and Mr. Marlin exchanged a few words before Petitioner hit Mr. Marlin twice on his side and once on the top of his head with the baseball bat, causing Mr. Marlin to fall to the ground. *Id.* at *1, *3. Mr. Marlin tried to get away, but Petitioner held him down, pressed the bat to his neck, and made the statement "'[g]o on and kill him'" while another person held a gun to Mr. Marlin's neck. *Id.* at *1, *2. While Petitioner held him down, Mr. Marlin saw Ms. Houston carry a flat screen television out of his bedroom, and he later realized that a cell phone and eight hundred

2

dollars were also taken. *Id.* at *1. Mr. Marlin denied giving Petitioner permission to enter his home and attack him and denied giving anyone permission to take his property. *Id.* at *2.

Petitioner hogtied Mr. Marlin using vacuum cords and Mr. Marlin's belt in the kitchen, and Mr. Twilley and Petitioner then "carried [Mr. Marlin] to the bathroom and threw him in." *Id.* at *2, *3. When Mr. Marlin heard the back door of his house close, he began to free himself from the restraints. *Id.* at *2. After freeing himself, Mr. Marlin went to a neighbor's house, where he called police. *Id.* When police arrived, Mr. Marlin told them Petitioner's name and described Petitioner's vehicle. *Id.* Police observed blood in the living room, kitchen, and bathroom of Mr. Marlin's house, and found electrical cords that appeared to have been cut from a vacuum cleaner and a cable cord without a television attached in a bedroom. *Id.*

Mr. Marlin was taken to the hospital by ambulance because he was in pain and having difficulty breathing. *Id.* At the hospital, Mr. Marlin received ten stitches for his head laceration and was diagnosed with various medical issues, including five broken ribs and a collapsed lung caused by a piece of his rib puncturing the lung, which led to pneumothorax, emphysema, and pneumonia. *Id.* at *2, *4. If untreated, increasing air trapped in the chest from a collapsed lung "'will move other structures in the chest, including the heart and the other lung,'" at which point "'it becomes an immediate life-threatening situation.'" *Id.* at *4.

Police stopped Petitioner's car in Murfreesboro and found a small flat screen television therein. *Id.* at *5. Petitioner identified the television as taken from Mr. Marlin's house and, after waiving his *Miranda* rights, told police that he took full responsibility for the incident with Mr. Marlin. *Id.* However, Petitioner denied using a bat or firearm and denied being the person who took the television. *Id.* Petitioner also stated that the incident occurred because "'[w]ord on the

3

street was that [Mr. Marlin] robbed [Petitioner],'" he and Mr. Marlin had animosity, and "'[i]t had to happen.'" *Id.*

Based on this evidence set forth at Petitioner's trial for offenses arising out of this incident, a Bedford County jury convicted Petitioner of especially aggravated burglary, facilitation of especially aggravated burglary, and especially aggravated kidnapping. *Id.* However, "the trial court reduced the especially aggravated burglary conviction to aggravated burglary. . . ." *Id.* Petitioner received a sentence of "twenty-three years for especially aggravated kidnapping, ten years for facilitation of especially aggravated robbery, and five years for aggravated burglary, with all sentences to be served concurrently." *Id.*

The Tennessee Court of Criminal Appeals ("TCCA") affirmed Petitioner's convictions. *Id.* at *6–10. Petitioner's counsel failed to timely file an application for permission to appeal that decision to the Tennessee Supreme Court ("TSC") but filed a motion to file a late application that was granted [Doc. 11-10 p. 2; Doc. 11-12 p. 17], and the TSC denied that application. *Houston v. State*, No. M2016-00467-CCA-R3-PC, 2017 WL 255881, at *1 (Tenn. Crim. App. June 3, 2017), *perm. app. denied* (Tenn. Oct. 4, 2017) ("*Houston II*").

Petitioner then filed a petition and an amended petition for post-conviction relief [Doc. 11-12, p. 26–37]. At the hearing on his amended petition for post-conviction relief, Petitioner's appointed trial/appellate counsel testified that he visited with Petitioner about five times prior to trial, obtained discovery materials, and spoke with counsel for co-defendants. *Id.* Counsel reviewed the potential jury list, researched the potential jurors' backgrounds, and believed he had provided Petitioner with discovery materials. *Id.* However, counsel acknowledged that the Tennessee Board of Professional Responsibility ("TBPR") publicly censured him for failing to

4

timely respond to Petitioner's requests for information and for failing to timely file an appellate brief, among other things [Doc. 11-14 p. 4]. *Id.* at \*2.

Counsel further testified that he did not have the closing arguments from Petitioner's trial transcribed, raised the issue of whether the prosecution had committed a *Brady* violation with regard to a statement from Petitioner in a motion for new trial and on appeal, and told Petitioner that he believed that the case against Petitioner was for aggravated assault, "and that the 'especially aggravated kidnapping charge was foundless [sic]'" *Id.*

Counsel also acknowledged that he had a conversation with Petitioner in which he stated that he wished that Petitioner had money to retain him, as Petitioner's trial lasted multiple days, and he could have hired an investigator to further investigate Mr. Marlin. *Id.* However, counsel acknowledged that he did not request funds for an investigator from the trial court, stated that he did not believe that there was anything else for an investigator to discover, and denied stating that use of an investigator would have changed the result of Petitioner's case. *Id.* A letter from counsel to Petitioner regarding this incident was introduced as evidence [Doc. 11-14, p. 7]. In that letter, counsel stated that if Petitioner had hired him, counsel would have hired an investigator, which would have "been the difference" in his representation of Petitioner, but also stated that it was "unclear if [hiring an investigator] would have made a difference" *Id.* Counsel also testified that despite Petitioner requesting multiple witnesses for his sentencing hearing, "[counsel] only attempted to secure the testimony of a single witness, who agreed to testify but did not actually do so." *Id.*

On cross-examination, counsel stated that he reviewed discovery materials with Petitioner, investigated the state's witnesses, and spoke to counsel for codefendants. *Id.* He acknowledged telling Petitioner that he believed Petitioner was guilty of aggravated assault rather than especially

5

aggravated kidnapping but denied guaranteeing any trial outcome. *Id.* Counsel testified that he would not have worked harder on Petitioner's case if he had been retained, rather than appointed, and that he gives everything he can on his cases regardless of pay. *Id.* at *3.

Counsel admitted to missing a reference to an audio recorded statement from Petitioner in the discovery materials provided by the prosecution, explaining that the state generally sent such recordings along with the discovery but did not do so in this case. *Id.* Counsel stated that he therefore raised a *Brady* claim based on this omission. *Id.* However, counsel did not believe that knowing about the relevant recording before trial would have changed the result of Petitioner's trial, as he believed the statement was relevant and admissible. *Id.*

Counsel for one of Petitioner's co-defendants, Ms. Myrick, testified that she did not recall Petitioner's counsel asking to interview her, but did recall Petitioner's counsel making a statement "'to the effect of, [e]verybody knows you work harder when you're being paid'" while within earshot of Petitioner, which she classified as shocking and stated made her concerned. *Id.*

Another witness, Tiffani Grogan, who was a former girlfriend of Mr. Marlin, testified that at one point, Mr. Marlin bragged about the incident underlying Petitioner's convictions, and told her that he had made some comments to make Petitioner and others "'believe . . . the reasons why they was [sic] coming over there.'" *Id.*

Mr. Twilley also testified and stated that he pled guilty to aggravated burglary due to his involvement in the underlying incident in exchange for a sentence of eight years at thirty percent and had no recollection of whether his counsel had spoken to Petitioner's counsel about the case. He recalled that the prosecution believed Petitioner was primarily responsible for the offenses. *Id.* at *4.

6

Petitioner's father, Sam Houston, testified that if counsel had called him to testify at Petitioner's sentencing, he would have stated that Petitioner was a good student and a good athlete and never gave his parents any trouble. *Id.* However, he acknowledged that as an adult, Petitioner had been arrested in Tennessee, Michigan, Alabama, New York, and New Jersey. *Id.*

Petitioner testified that counsel visited him at jail twice and met with him at monthly court dates for ten to fifteen minutes. *Id.* Petitioner also stated that, at one visit, counsel told him that an attorney named James Tucker would be covering for counsel in court but did not tell Petitioner that Mr. Tucker had previously represented Mr. Marlin, of which Petitioner was aware and thought strange. *Id.* However, Petitioner admitted that Mr. Tucker never asked him about the case and only requested a continuance. *Id.*

Petitioner also testified that he frequently wrote letters to the TBPR as a way to make a point to his counsel and that one of his complaints was about counsel's failure to make a *Brady* claim regarding his recorded statement to police during trial and in direct appeal, as he believed that statement was "'the piece of evidence that sealed his fate.'" *Id.*

Petitioner also testified that counsel did not have questions prepared for cross examination at trial and did not provide Petitioner with a list of potential jurors. *Id.* He also claimed that counsel told him that, at most, he was guilty of aggravated assault, and should not worry about the trial. *Id.*

Petitioner further alleged that counsel saw a picture of Petitioner's truck and indicated that if he had known Petitioner had money in a truck like that, Petitioner could have paid him, which would have allowed him to hire an investigator and get a better result. *Id.*

Petitioner additionally asserted that he asked counsel to present his parents, the mother of his child, and a woman named Lisa Irvan as witnesses at his sentencing hearing, and that he wanted

7

Ms. Irvan to testify that Mr. Marlin was "a true criminal and woman beater." *Id.* However, while counsel attempted to have the mother of Petitioner's child attend the hearing, bad weather prevented this. *Id.*

After the hearing, the post-conviction court denied Petitioner relief [Doc. 11-12 p. 38–48], and the TCCA affirmed. *Id.* at *7. The TSC denied Petitioner's application to appeal [Doc. 11-21].

Now before the Court is Petitioner's pro se amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he asserts that (1) his counsel was ineffective as to a number of issues at trial and on appeal and (2) the evidence was insufficient to support his especially aggravated kidnapping conviction [Doc. 2]. Respondent filed a response in opposition thereto [Doc. 12], as well as the state record [Doc. 11]. Petitioner filed a reply [Doc. 15]. After reviewing the relevant filings, including the state court record, the Court finds that the record establishes that Petitioner is not entitled to relief under § 2254. Accordingly, no evidentiary hearing is warranted, *see* Rules Governing § 2254 Cases, Rule 8(a) and *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007), Petitioner's petition for § 2254 relief will be **DENIED**, and this action will be **DISMISSED**.

## II. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), codified in 28 U.S.C. § 2254, *et. seq.*, a district court may not grant habeas corpus relief for a claim that a state court adjudicated on the merits unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

8

28 U.S.C. § 2254(d)(1)–(2).

When evaluating the evidence presented in state court, a federal habeas court presumes the correctness of the state court's factual findings unless the petitioner rebuts that presumption with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). The § 2254(d) standard is a hard standard to satisfy. *Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) (noting that "§ 2254(d), as amended by AEDPA, is a purposefully demanding standard . . . 'because it was meant to be'") (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)).

## III. ANALYSIS

### A. Sufficiency of the Evidence

Petitioner asserts that the evidence was insufficient to support his especially aggravated kidnapping conviction under Tennessee law because it established that his confinement of Mr. Marlin was incidental to the other offenses for which Petitioner was convicted [Doc. 2, p. 35–38]. The United States Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307 (1979), provides the controlling rule for such claims. *See Gall v. Parker*, 231 F.3d 265, 287–88 (6th Cir. 2000), *superseded on other grounds Parker v. Matthews*, 567 U.S. 37 (2012). In *Jackson*, the Supreme Court held that the evidence is sufficient to sustain a conviction if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson*, 443 U.S. at 319. In making this determination, the district court may not "reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

A habeas court reviewing a challenge to the sufficiency of the evidence must apply two levels of deference. *Parker v. Renico*, 506 F.3d 444, 448 (6th Cir. 2007). First, under *Jackson*, the court gives deference to the fact finder's verdict "with explicit reference to the substantive

9

elements of the criminal offense as defined by state law." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008) (citing *Jackson*, 443 U.S. at 324 n.16); *see also Cavazos v. Smith*, 565 U.S. 1, 6–7 (2011) (providing that "a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution'") (quoting *Jackson*, 443 U.S. at 326). The habeas court must also give additional deference to the state court's consideration of the trier-of-fact's verdict pursuant to the highly deferential standards of the AEDPA. *Cavazos*, 565 U.S. at 6 (noting the double deference owed "to state court decisions required by § 2254(d)" and "to the state court's already deferential review"). As such, a petitioner bringing a claim of insufficient evidence "bears a heavy burden." *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986).

In its opinion denying Petitioner relief for this claim, the TCCA first set forth the relevant standard for such claims under state and federal law. *Houston I*, at \*6. The TCCA then examined relevant Tennessee law regarding the offense of kidnapping, noted that Petitioner did not dispute that the trial court had issued the proper jury instruction regarding this charge, and found that, viewed in the light most favorable to the prosecution, the proof at trial supported Petitioner's conviction for this offense. *Id.* at \*7–\*8.

Specifically, the TCCA noted that a key element of a kidnapping conviction under Tennessee law is that the confinement underlying this offense was not "'essentially incidental to an accompanying felony.'" *Id.* at \*7 (quoting *State v. White*, 362 S.W.3d 559, 578 (Tenn. 2012)). The TCCA also stated that, in determining whether this element is met, a Tennessee jury may consider all relevant circumstances, including:

> • the nature and duration of the victim's removal or confinement by the defendant;

> - whether the removal or confinement occurred during the commission of the separate offense;
> - whether the interference with the victim's liberty was inherent in the nature of the separate offense;
> - whether the removal or confinement prevented the victim from summoning assistance, although the defendant need not have succeeded in preventing the victim from doing so;
> - whether the removal or confinement reduced the defendant's risk of detection, although the defendant need not have succeeded in this objective; and
> - whether the removal or confinement created a significant danger or increased the victim's risk of harm independent of that posed by the separate offense.

*Id.* at *8 (citing *White*, 362 S.W.3d at 580–81).

In applying this law to Petitioner's case, the TCCA found that evidence showed that (1) Petitioner had "entered [Mr. Marlin's] house with the intent to beat him;" (2) Petitioner hit Mr. Marlin with a bat three times, causing Mr. Marlin serious bodily injury; (3) Petitioner's sister took Mr. Marlin's television after Petitioner had struck Mr. Marlin, and (4) Petitioner then hogtied Mr. Marlin and, along with Mr. Twilley, threw Mr. Marlin into the bathroom. *Id.* at *8. The TCCA concluded that this evidence supported Petitioner's especially aggravated kidnapping conviction under Tennessee law, as this confinement "prevented [Mr. Marlin] from summoning assistance immediately, reduced [Petitioner]'s risk of detection by allowing him enough time to flee the county, and increased [Mr. Marlin]'s risk of harm considering the nature of his injuries." *Id.*

The Court agrees with the TCCA that the evidence at Petitioner's trial established that Petitioner's confinement of Mr. Marlin was greater than necessary to commit the offenses of aggravated burglary and facilitation of especially aggravated burglary, and therefore supported Petitioner's conviction for especially aggravated kidnapping. Specifically, the offense of especially aggravated burglary required evidence that Petitioner knowingly entered the victim's house with the intent to assault him or commit theft without consent and the victim to suffer serious

11

injury [Doc. 11-2 p. 36–53]; Tenn. Code Ann. § 39-14-404. The offense of facilitation of especially aggravated burglary required evidence that Petitioner knowingly substantially assisted another in committing especially aggravated burglary [*Id.*]; Tenn. Code Ann. § 39-11-403. The offense of especially aggravated kidnapping required evidence that Petitioner substantially, knowingly, and unlawfully interfered with Mr. Marlin's liberty by using a deadly weapon or with Mr. Marlin suffering serious bodily injury [*Id.*]; Tenn. Code Ann. § 39-13-305.

As set forth above, the evidence established that before Petitioner restrained Mr. Marlin and threw him in the bathroom, Petitioner had (1) intentionally entered Mr. Marlin's residence after expressing his intent to assault and take things from Mr. Marlin without Mr. Marlin's consent to do so; (2) beat Mr. Marlin with a baseball bat in a manner that caused Mr. Marlin significant injuries; and (3) held Mr. Marlin down while someone else held a gun to Mr. Marlin's neck and Petitioner's sister took Mr. Marlin's television. *Id.* at \*1–3. The evidence also established that Petitioner's confinement of Mr. Marlin delayed his ability to call for help, provided Petitioner time to flee, and increased the risk of harm to Mr. Marlin due to his collapsed lung. *Id.* at \*2, \*4, \*5. As such, a rational jury could have found the evidence at trial proved the essential elements of especially aggravated kidnapping under Tennessee law beyond a reasonable doubt.

Thus, Petitioner has not met his burden to establish that the TCCA's finding that the evidence was sufficient to support his conviction for especially aggravated kidnapping was an unreasonable application of federal law or an unreasonable determination of the facts in light of the evidence presented, and Petitioner is not entitled to relief under § 2254 for this claim.

### B. Ineffective Assistance of Counsel

As set forth above, Petitioner also claims that his trial counsel was ineffective as to a number of issues at trial and on appeal [Doc. 2 p. 18]. The Sixth Amendment provides, in pertinent

12

part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. This includes the right to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The Supreme Court has set forth a two-pronged test for evaluating such claims:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687. A petitioner has the burden of proving ineffective assistance of his counsel. *Virgin Islands v. Nicholas*, 759 F.2d 1073, 1081 (3d Cir. 1985).

In considering the first prong of *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A party asserting an ineffective assistance of counsel claim must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires a claimant to show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.

13

The Supreme Court has emphasized that a claimant must establish both prongs of a claim for ineffective assistance of counsel to meet his burden, and if either prong is not satisfied, the claim must be rejected. *Strickland*, 466 U.S. at 69. Moreover, a habeas petitioner alleging ineffective assistance of counsel bears a heavy burden, given the "doubly deferential" review of a such a claim under § 2254(d)(1). *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

### 1. Defaulted Claims

In his reply, Petitioner acknowledges that he did not present the following claims for ineffective assistance of counsel to the TCCA: (1) counsel was ineffective for having Mr. Tucker cover a proceeding in Petitioner's case for him; (2) counsel was ineffective for failing to have witnesses at sentencing; (3) counsel was ineffective for failing to adequately prepare for trial, including failing to conduct adequate visits with Petitioner, failing to prepare for cross examinations, and failing to discover Tiffani Grogan; (4) counsel was ineffective for expressing his opinion about the charges; and (5) counsel was ineffective with regard to the acts underlying his TBPR public censure [Doc. 15 p. 22–23].

A petitioner who fails to raise his federal claim in the state courts and cannot now do so due to a procedural rule has committed a procedural default that forecloses federal habeas review unless the petitioner shows cause to excuse his failure to comply with the procedural rule and actual prejudice from the constitutional violation. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). An attorney's ineffective assistance in post-conviction proceedings generally does not establish "cause" to overcome procedural default of claims. *Id.* at 755. Where a habeas petitioner could raise a claim for trial counsel's ineffective assistance for the first time in a post-conviction petition, however, ineffective assistance of post-conviction counsel may be "cause" to excuse the procedural default. *Wallace v. Sexton*, 570 F. App'x 443, 452–53 (6th Cir. 2014); *Trevino v.*

14

*Thaler*, 133 S.Ct. 1911, 1918–21 (2013); *Martinez v. Ryan*, 132 S. Ct. 1309, 1320 (2012). This exception applies in Tennessee. *Sutton v. Carpenter*, 745 F.3d 787, 792–95 (6th Cir. 2014). However, this exception does not apply to a claim of ineffective assistance of trial counsel that a prisoner raised in the initial-review collateral stages but defaulted on appeal. *Middlebrooks v. Carpenter*, 843 F.3d 1127, 1136 (6th Cir. 2016) (stating that *Martinez* did not apply "because those claims were raised and rejected on the merits by the initial postconviction court, and ineffective assistance of counsel on post-conviction appeal cannot establish 'cause' to excuse [petitioner]'s procedural default, which occurred only in the Tennessee Court of Criminal Appeals").

Petitioner presented his claims that counsel was ineffective by failing to adequately prepare Petitioner for trial and failing to call witnesses at Petitioner's sentencing hearing in his petition for post-conviction relief [Doc. 11-12 p. 34–35] but Petitioner did not present them in his appeal thereof [Doc. 11-15]. Thus, *Martinez* does not excuse Petitioner's default of these claims.[2] *Id.*

Moreover, even if Petitioner did not default these two claims, Petitioner has not alleged or met his burden to establish that these omissions by counsel had any effect on the judgment against him [Doc. 2 p. 17, 29]. As such, Petitioner is not entitled to relief under § 2254 for these claims.

The remainder of Petitioner's unexhausted claims arguably fit within the *Martinez* framework. Thus, the Court will address them below.

### 2. Mr. Tucker

Petitioner alleges that counsel was ineffective for asking Mr. Tucker, a lawyer who had previously represented Mr. Marlin, to cover a proceeding in Petitioner's case, which Petitioner alleges created a conflict of interest [Doc. 2 p. 17, 18–19; Doc. 15 p. 22]. However, as set forth

---

[2] Petitioner labelled these claims VI, VII, and X in his § 2254 petition [Doc. 2 p. 17, 29].

15

above, the undisputed evidence in the record establishes that Mr. Tucker only asked for a continuance in Petitioner's case and never discussed the case with Petitioner, and nothing in the record suggests that this incident prejudiced Petitioner in any way. As such, this claim is without merit and Petitioner is not entitled to relief under § 2254 for this claim.

### 3. Pretrial Investigation and Investigator Funds[3]

Petitioner also alleges that counsel was ineffective because he stated that if Petitioner had hired him, he could have hired an investigator, specifically to learn more about Mr. Marlin, and that this would have made a difference in Petitioner's case, but counsel never sought funds for an investigator from the trial court and failed to conduct an adequate pretrial investigation [Doc. 2 p. 17, 20–26; Doc. 15 p. 26–30]. The TCCA found that Petitioner was not entitled to relief for his claims related to counsel's statement about hiring an investigator or counsel's alleged lack of pretrial investigation, including counsel's failure to seek funds for an investigator, because Petitioner had not set forth any evidence of prejudice resulting from these acts and omissions. *Houston II*, at *6.

The Court agrees with the TCCA that no evidence in the record supports finding that counsel's (1) statement about hiring an investigator; (2) failure to seek funds for an investigator; or (3) failure to do more pretrial investigation resulted in any prejudice to Petitioner. Specifically, Petitioner has presented no evidence that a hired investigator or more pretrial investigation by counsel could have obtained that would have made a difference in his trial. While Petitioner speculates in his reply about evidence that he believes could have established his innocence [Doc. 15 p. 27], Petitioner has never produced any such evidence.

Petitioner also alleges in his reply that an investigator and/or more pretrial investigation by

---

[3] Petitioner labelled these claims II, III, XI, and XII in his § 2254 petition [Doc. 2 p. 17, 20–26, 29–31]. However, as they are all related, the Court will address them together.

16

counsel could have discovered evidence that came out at trial and seeks to characterize that evidence as establishing that the incident underlying his convictions was actually a fight that the victim initiated, and thus that he is innocent, and therefore asserts that the prejudice to him from counsel's performance is his convictions for something he did not do [*Id.* at 27–29]. However, to the extent Petitioner seeks to assert a free-standing substantive claim for habeas corpus relief based on actual innocence through these allegations, his reply is not a place to do so. Regardless, any such claim is not cognizable under § 2254. *Cress v. Palmer*, 484 F.3d 844, 854–55 (6th Cir. 2007) (holding that a free-standing innocence claim is not cognizable without constitutional error at trial).

Further, the Court has already found that Petitioner's claim that the evidence was insufficient to support his conviction for especially aggravated kidnapping has no merit, and Petitioner has not challenged the sufficiency of the evidence for his other convictions. Moreover, the record does not support Petitioner's characterization of the evidence at trial as suggesting his innocence.

As such, Petitioner is not entitled to relief for these claims under § 2254.

### 4. Retention

Petitioner also alleges that counsel was ineffective for making a comment indicating that everyone works harder when paid [Doc. 2 p. 17, 29]. However, Petitioner has not alleged or set forth any evidence that the result of his trial would have been different if counsel had worked harder, and nothing in the record suggests that this comment prejudiced Petitioner. Thus, Petitioner is not entitled to relief for this ineffective assistance of counsel claim under § 2254.

### 5. Petitioner's Pretrial Statement

Petitioner also alleges that counsel was ineffective for not discovering his recorded pretrial statement to police prior to trial [Doc. 2 p. 17, 26–28; Doc. 15 p. 26–28]. The TCCA found that

17

Petitioner was not entitled to relief for this claim because "[n]othing in the record suggests that the statement was obtained in violation of [] [P]etitioner's constitutional rights, that it was otherwise inadmissible, or, most importantly, that the recorded statement was actually admitted into evidence at trial." *Id.* Petitioner has not argued or pointed to any evidence in the record to establish that this was an unreasonable application of federal law or an unreasonable determination of the facts in light of the evidence presented. As such, Petitioner is not entitled to § 2254 relief for this claim.

### 6. Advice

Petitioner also alleges that trial counsel was ineffective for advising him that he believed the case against Petitioner was mainly for aggravated assault and that the especially aggravated kidnapping charge was "foundless" [sic] [Doc. 2 p. 17, 31]. However, as Respondent correctly points out, counsel is not ineffective for sharing his opinion about the case with Petitioner, and nothing in the record suggests that this statement prejudiced Petitioner. As such, Petitioner is not entitled to relief under § 2254 for this claim.

### 7. Cross Examination and Jury List

Petitioner also alleges that counsel was ineffective for not preparing questions for cross examinations of witnesses and not providing him with the jury list [*Id.* at 17, 29]. However, nothing in the record suggests that any prejudice to Petitioner resulted from either of these omissions. As such, Petitioner is not entitled to relief under § 2254 for these claims.

### 8. Tiffani Grogan

Petitioner also faults counsel for not presenting Tiffani Grogan as a witness at his trial [*Id.* at 17, 31]. As set forth above, Ms. Grogan testified at the hearing on Petitioner's petition for post-conviction relief that Mr. Marlin bragged about the incident underlying Petitioner's convictions and told her that he made some comments to make Petitioner and the others believe they were

18

coming over for a reason. *Houston II*, at *3. However, even if the Court assumes that counsel should have interviewed Ms. Grogan about her involvement with Mr. Marlin, her testimony about Mr. Marlin's statements about his encounter with Petitioner was vague and ambiguous, and the record does not support finding that this testimony would have changed the result of Petitioner's trial. Thus, Petitioner is not entitled to § 2254 relief for this claim.

### 9. Censure

Petitioner also asserts that counsel was ineffective for failing to timely file an appellate brief and failing to timely respond to Petitioner's requests for information, for which the TBPR publicly censured counsel [Doc. 2 p. 17, 31]. However, while Petitioner refers to counsel's failure to timely file an "appellate brief," and the TBPR also used this term in its letter announcing its public censure of counsel [Doc. 11-14 p. 4], the record suggests that this claim actually relates to counsel's failure to file a timely Rule 11 application to appeal the TCCA's decision affirming his convictions to the TSC [Doc. 11-12 p. 35; Doc. 11-10 p. 2].

But the record establishes that counsel was ultimately granted an extension to file that Rule 11 application [Doc. 11-10 p. 2] and that the TSC denied the application. *Houston II*, at *1. Thus, Petitioner cannot establish that he suffered any prejudice due to this omission. Moreover, nothing in the record suggests that counsel's failure to timely respond to Petitioner's requests for information prejudiced Petitioner. Thus, Petitioner is not entitled to § 2254 relief for these claims.

## IV. CONCLUSION

For the reasons set forth above, Petitioner's petition for § 2254 relief will be **DENIED**, and this action will be **DISMISSED**.

## V. CERTIFICATE OF APPEALABILITY

The Court must now consider whether to issue a certificate of appealability ("COA"), should Petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a habeas proceeding only if he is issued a COA, and a COA may only be issued where a Petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). When a district court denies a habeas petition on a procedural basis without reaching the underlying claim, a COA should only issue if "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where the court dismissed a claim on the merits, but reasonable jurists could conclude the issues raised are adequate to deserve further review, the petitioner has made a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 327, 336 (2003); *Slack*, 529 U.S. at 484.

Reasonable jurists would not debate the Court's finding that Petitioner procedurally defaulted his claims that his counsel was ineffective with regard to preparing Petitioner for trial and calling witnesses to Petitioner's sentencing hearing. Further, reasonable jurists could not conclude that Petitioner has made a substantial showing of a denial of a constitutional right in any of his claims such that they would be adequate to deserve further review. Accordingly, a **COA SHALL NOT ISSUE** and the Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. Fed. R. App. P. 24.

**AN APPROPRIATE ORDER WILL ENTER.**

**ENTER:**

                                                s/Clifton L. Corker
                                                United States District Judge